# United States Court of Appeals
## For the First Circuit

No. 03-1032

NANCY MATIAS-CORREA,

Plaintiff, Appellant,

v.

PFIZER, INC.; MEDICAL CARD SYSTEMS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Raymond L. Sanchez Maceira for appellant.
Carl Schuster, with whom Lourdes C. Hernández-Venegas and
Schuster, Usera & Agulió LLP, were on brief for appellees.

September 25, 2003

**HOWARD**, **Circuit Judge**.  Plaintiff-appellant Nancy Matías-Correa appeals the district court's entry of summary judgment in favor of defendants-appellees Pfizer, Inc. ("Pfizer"), and Medical Card System, Inc. ("MCS"), in a suit in which Matías alleged that the termination of her disability benefits violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  We affirm.

## I.    Factual and Procedural Background

Matías worked as a machine operator for Pfizer (formerly Warner-Lambert) in a Puerto Rico facility, starting as a temporary employee in 1986 and working on a permanent basis from September 1988 until November 1995.  While employed by Pfizer, Matías participated in Pfizer's Long Term Disability Benefits Plan, which provides disability benefits for participants who are "totally disabled."  A participant is considered totally disabled under the terms of the plan if, during the first two years of disability, she is "unable to perform the basic duties of [her] occupation, and [is] not involved in any other gainful occupation."  After receiving plan benefits for two years, however, a participant will only be considered totally disabled if she is "unable to work in an occupation or job for which [she is] qualified or may be qualified based on [her] academic background, training or experience."  MCS acted as claims administrator for the plan.

-2-

In April 1996, Matías applied for and was granted disability benefits under the plan, based on her condition of low back pain syndrome, radiculopathy, and depression. At the time, her condition satisfied the plan's first definition of "total disability."

After two years passed, however, Matías could only continue to receive benefits if her physical condition satisfied the second definition of total disability.[1] Under the terms of the plan, a participant receiving benefits "may be required to undergo a medical examination . . . and/or to submit evidence of continued Total Disability satisfactory to [MCS] . . . to determine [her] continued entitlement to disability benefits or ability to resume active employment." Further, such a participant would periodically "be required to submit evidence to [MCS] of [her] continued total disability," and refusal to submit such evidence would result in the discontinuation of benefits.

On April 6, 2001, MCS requested that Matías submit copies of all medical records and progress notes of her treating doctors. Matías complied, submitting records from a variety of medical professionals, including her rheumatologist, neurologist, and psychiatrist. MCS referred Matías's file to Dr. José Ocasio, an independent occupational medical consultant, for an independent

_____

[1]The plan restricted benefits based on mental disability to a maximum of two years.

medical evaluation. On May 14, 2001, Dr. Ocasio made a preliminary finding that Matías's records did not indicate total disability. He noted that Matías did not appear to be following a regular treatment schedule with her physicians, and recommended a Functional Capacity Evaluation ("FCE").

Matías's FCE showed that she was able to work at a "sedentary physical demand level" during an eight-hour day. The tests suggested symptom exaggeration by Matías and "very poor effort or voluntary submaximal effort which is not necessarily related to pain, impairment or disability." Based on these results and his prior findings, Dr. Ocasio recommended the termination of Matías's disability benefits on the ground that she was not totally disabled. MCS terminated Matías's disability benefits, effective June 15, 2001.

On August 3, 2001, Matías filed a first-level appeal of her benefits termination with MCS. As part of this appeal, she submitted additional medical documents, including three undated doctors' assessments of her physical capabilities during an eight-hour workday. These "Residual Functional Capacity Assessments" ("RFC Assessments") varied in their conclusions as to the amount of activity Matías could tolerate. For example, one doctor estimated that Matías could sit for less than one hour and stand for less than one hour, while another estimated that she could sit for two

to four hours and stand for one to two hours. All found that Matías needed rest periods during the day.

MCS referred Matías's full medical file, including the new documents submitted on appeal, to Dr. Ocasio for evaluation, and on August 13, 2001, Dr. Ocasio once again recommended the termination of Matías's benefits. He found that the additional materials confirmed that Matías was not totally disabled, concluding in particular that all three RFC Assessments indicated that Matías could work for short periods of time, with rest. Two days later, MCS affirmed its termination of Matías's benefits, notifying her that she did not meet the definition of "totally disabled" under the plan. MCS concluded that although Matías suffered from several physical conditions that required treatment, she was able to work. MCS also informed Matías of her right to appeal the decision by submitting any additional evidence she wished to have considered.

Matías requested a second-level appeal, and on October 12, 2001, she submitted updated progress notes from her psychiatrist, Dr. José Bisbal, and the results of an MRI performed on her right knee.[2] She also resubmitted a number of the medical documents she had already provided as part of her initial review and first appeal. Dr. Ocasio again reviewed Matías's medical

_____

[2]The MRI revealed some abnormalities in Matías's knee, including tears and degeneration.

evidence, and concluded that she was not "totally disabled."  On October 30, 2001, MCS issued its final denial of Matías's appeal, and affirmed the termination of her benefits.

In November 2001, Matías filed suit against Pfizer and MCS in the United States District Court for the District of Puerto Rico, claiming a violation of ERISA based on the termination of her benefits.  Matías claimed that she suffered from debilitating conditions and that MCS's decision to terminate her benefits was arbitrary and capricious.  In September 2002, Pfizer and MCS moved for summary judgment on the ground that the benefits determination was supported by substantial evidence in the record.  In November 2002, the district court entered judgment in favor of defendants.  The court found that (1) the standard of review was arbitrary and capricious because the plan granted the necessary discretionary authority to MCS; and (2) MCS had not acted arbitrarily or capriciously in light of substantial record evidence supporting MCS's termination of benefits.  This appeal followed.

## II.  Analysis

A.      The ERISA Standard of Review

Matías alleges that the district court erred in reviewing MCS's benefits determination under an "arbitrary and capricious" standard.  Such a standard of review is appropriate where the language of the benefits plan reflects a "clear grant of discretionary authority to determine eligibility for benefits."

Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002) (citing Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998)); see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

The plan states that MCS "shall administer claims under the Plan," and

> [S]hall have the power and the duty, <u>including discretionary authority, to take all actions and to make all decisions necessary or proper to carry out the provisions of the Plan</u>, including, but not limited to, the following:
>
> \*     \*     \*
>
> To interpret the Plan to determine whether a claimant is eligible for benefits, to decide the amount, form, and timing of benefits, and to resolve ambiguities, inconsistencies, omissions and any other claim-related matters under the Plan which is [sic] raised by a claimant or identified by the Investment Committee, <u>its interpretation and resolution to be final, conclusive and binding on all parties affected thereby</u>

App. at 69-70 (emphasis added).

Despite this language, Matías alleges that the plan did not grant final discretionary authority to MCS because Pfizer has retained the authority to reverse MCS's decisions concerning the plan. As support, Matías points to language in the plan granting an internal committee at Pfizer (the "Investment Committee") authority to administer the plan.[3] The district court rejected

---

[3]Matías refers to a provision stating:

The Investment Committee shall administer the Plan and shall have the power and the duty, including discretionary authority, to take all actions and to make all decisions necessary or proper to carry out the Plan, including, but not

-7-

this argument, noting the unequivocal authority of MCS to administer <u>claims</u> under the plan, a power not assigned to the Investment Committee.

While the Investment Committee appears to hold some administrative authority under the terms of the plan, MCS is the entity designated to administer claims under the plan, and to interpret the plan to determine a claimant's eligibility for benefits. MCS's eligibility determinations are "final, conclusive and binding on all parties affected thereby." Matías offers no basis to conclude that MCS lacked the discretionary authority to make the necessary judgment calls concerning her eligibility for

---

limited to, the following:

  (a)  To require any person to furnish such information as it may request for the purpose of the proper administration of the Plan as a condition to receiving any benefit under the Plan;
  (b)  To make and enforce such rules and regulations and prescribe the use of such forms as it shall deem necessary or desirable for the efficient administration of the Plan;
  (c)  To interpret the Plan, and to resolve ambiguities, inconsistencies and omissions, its interpretation and resolution to be finally conclusive and binding on all parties affected thereby;
  (d)  To decide on questions concerning the Plan and the eligibility of any Employee to participate in the Plan in accordance with the provisions of the Plan;
  (e)  To compute the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan . . . .

App. at 71.

benefits.  The district court properly applied the arbitrary and capricious standard of review.

B.         The Benefits Determination

We review de novo the district court's entry of summary judgment in favor of the defendants.  See Twomey v. Delta Airlines Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003).  Where the underlying decision by a plan administrator is subject to the arbitrary and capricious standard of review, our review involves an inquiry into "whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits."  Id. (quoting Leahy, 315 F.3d at 18).  The touchstone is whether MCS's benefits determination was reasonable.  See Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).

Matías contends that MCS's conclusion that she was not totally disabled "is at odds with the generally recognized requirement for sedentary jobs," including the requirements set forth by the Social Security Administration.  As the district court noted, however, Matías was required to satisfy the plan's definition of total disability (i.e. that she was completely unable to work in an occupation for which she was, or might be, qualified based on her background).  Cf. Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir.

-9-

2000) ("[A]lthough a related Social Security benefits decision might be relevant to an insurer's eligibility determination, it should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan.").

Matías also alleges that MCS relied too heavily on the results of its own investigation, and should have given more weight to her doctors' diagnoses, including those that "flatly contradicted the FCE." But under the applicable standard of review, the question is "not which side we believe is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor." Brigham v. Sun Life of Canada, 317 F.3d 72, 85 (1st Cir. 2003)(alterations omitted)(quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)); see Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 6 (1st Cir. 2003); see also Black & Decker Disability Plan v. Nord, --- U.S. ---, 123 S. Ct. 1965, 1971 (2003) ("Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But . . . courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician.").

MCS considered medical evidence that supported its conclusion that, while Matías was in need of medical treatment, she was not totally disabled within the meaning of the plan.

Matías's FCE generated evidence that she was capable of sedentary physical work.  That exam also showed signs of symptom exaggeration.  Matías also submitted evidence, including three RFC Assessments, from which an independent medical expert concluded that she could work for limited periods of time, with rest.  In light of the record evidence taken as a whole, we find that MCS's termination of Matías's benefits was within its discretion.

**Affirmed.**