# United States Court of Appeals

## For the First Circuit

No. 06-2087

JOSÉ MORALES-ALEJANDRO,

Plaintiff, Appellant,

v.

MEDICAL CARD SYSTEM, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and DiClerico, Jr.,** District Judge.

Héctor L. Claudio-Rosario on brief for appellant.
Lourdes C. Hernández-Venegas and Schuster & Aguiló, LLP on
brief for appellee.

May 16, 2007

---

*Of the District of New Hampshire, sitting by designation.

**DICLERICO, District Judge**. José Morales-Alejandro sought reinstatement of long-term disability benefits, reimbursement of his medical expenses, and payment of past long-term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The district court considered the parties' cross motions for judgment on the administrative record and granted Medical Card System, Inc.'s motion, concluding that the decision to terminate Morales's benefits was not arbitrary or capricious. Morales appeals from that decision.

## I.

Morales worked for seven years at Warner Lambert, Inc., and participated in the long-term disability plan ("Plan") offered there.[1] In 1994, Morales filed a claim for long-term disability benefits under the Plan, claiming disability due to bronchial asthma and other ailments, which was approved by the Plan administrator. As a condition for receiving benefits, Morales filed an application for social security disability benefits, which was approved. The Plan administrator required Morales to reimburse the Plan for the social security benefits he had received.

In 1997, Medical Card System, Inc. ("MCS") became the Plan administrator and approved the continuation of Morales's

_____

[1]Medical Card System, Inc., represents that Warner Lambert, Inc., is now part of Pfizer Pharmaceuticals LLC.

benefits.[2]  At the end of 1999, the Social Security Administration notified Morales that his social security benefits would continue, subject to periodic review. MCS began a review of Morales's continued eligibility for benefits under the Plan in April of 2001.

As part of the review, MCS asked Morales to provide updated medical information for the period from January of 2000 to April of 2001.  In response, Morales initially sent a list of his hospitalizations from 1990 through early January of 2000, a list of medications he was taking, and documentation of his move to Tortola in the British Virgin Islands.  MCS also required Morales to undergo an independent examination by Dr. Rene Ramirez Ortiz, which was conducted on May 4, 2001.  Dr. Ramirez found that Morales had mild persistent bronchial asthma with an appropriate level of control and that he had been stable for the last few years.  Dr. Ramirez also noted that Morales had a bronchial cough during the examination.  Morales then sent MCS a note from his treating physician, Dr. E. Castillo Volckers, dated May 21, 2001, stating that Morales had been in his care for the past two years, had not needed hospitalization during that time, but was not able to work.

An independent occupational medical consultant, Dr. Ocasio, reviewed Morales's entire file in June of 2001, noting diagnoses of chronic obstructive pulmonary disease, high blood

---

[2]Other companies served as the Plan administrator prior to July 1, 1997, when MCS assumed that function.

pressure, and diabetes. Dr. Ocasio concluded that Morales had a mild and stable pulmonary condition and recommended that MCS terminate Morales's long-term disability benefits.

MCS notified Morales that his benefits would be terminated as of June 30, 2001, and Morales appealed. With his appeal, Morales resubmitted copies of the same information he had provided in response to MCS's request for his updated medical records. An MCS disability specialist re-evaluated Morales's file, and based on the re-evaluation, MCS denied Morales's appeal.

Morales filed suit against MCS in the Puerto Rico Court of First Instance, San Juan, in April of 2005, alleging breach of contract and seeking long-term disability benefits. MCS removed the case to the United States District Court for the District of Puerto Rico, asserting that Morales's complaint raised claims governed by ERISA. Once in federal court, MCS filed a motion on August 12, 2005, requesting that the case be removed from the standard track and decided on the administrative record. The court granted the motion on September 7, 2005, setting a briefing schedule.

On September 23, 2005, new counsel filed an appearance on behalf of Morales.[3] Counsel filed an opposition to MCS's previously-granted motion to have the case removed from the

_____

[3]Morales's original counsel was not a member of the federal bar, and therefore, could not participate in the case once it was removed to federal court.

-4-

standard track, seeking discovery on an alleged conflict of interest, and also moved for leave to file an amended complaint. The district court denied the opposition and the motion for leave to file an amended complaint. As required by the briefing schedule, Morales moved for judgment on the administrative record. He also filed a motion to set aside the court's denial of his motion for leave to file an amended complaint, and the court denied this motion as untimely. MCS filed its motion for judgment on the administrative record within the time allowed.

The case was referred to a magistrate judge for a report and recommendation, which issued on January 11, 2006. The magistrate judge recommended that the court grant MCS's motion for judgment and deny Morales's motion. After Morales filed an objection and MCS responded, the district court adopted the report and recommendation on June 20, 2006. Judgment was entered in favor of MCS, and this appeal followed.

## II.

On appeal Morales contends that the district court abused its discretion in denying his motion to amend his complaint and in not allowing him to conduct discovery on the issue of MCS's alleged conflict of interest. Morales also contends that the district court erred in concluding that MCS's decision denying him benefits was not arbitrary and capricious and that Morales was not prejudiced by

MCS's communications during the disability claim process. MCS argues that the district court properly denied Morales's motion for leave to file an amended complaint and his request to conduct discovery and did not err in granting MCS's motion for judgment on the administrative record.

A. <u>Leave to Amend and Discovery</u>

In his motion for leave to amend, Morales sought to add allegations that procedural irregularities occurred during the claims process and to add a "bad faith claim against the insurer." Morales's request for discovery was included in his opposition to MCS's previously-granted motion to have the case removed from the standard track. The district court denied the motion for leave to amend and the request for discovery without a written opinion. On appeal, Morales argues that decision was an abuse of discretion because MCS had an inherent conflict of interest or bias toward denying benefits based on its dual role as insurer and Plan administrator.

A district court's decision to deny leave to amend the complaint is reviewed for an abuse of discretion. <u>Universal Commc'n Sys., Inc.</u> v. <u>Lycos</u>, 478 F.3d 413, 418 (1st Cir. 2007). Under that deferential standard, we uphold the district court's decision "'for any reason apparent from the record.'" <u>Id.</u> (quoting <u>Resolution Trust Corp.</u> v. <u>Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994)). ERISA cases

are generally decided on the administrative record without discovery, and "some very good reason is needed to overcome the presumption that the record on review is limited to the record before the administrator." Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).

Morales's conflict of interest theory is premised on a mistaken assumption. As MCS points out, the Plan explains that it is funded by contributions from participating companies, and in this case it is Warner Lambert. The contributions are held in a trust fund for the benefit of Plan participants and beneficiaries. MCS administers claims under the Plan but does not insure the Plan. Successful claims are paid from the trust fund and not by MCS. Therefore, Morales's "inherent" conflict of interest theory is not supported by the record, and he showed no other reason to support his request for discovery. The district court did not abuse its discretion in denying his motion for leave to amend and his request for discovery.

B. Decision to Terminate Benefits

The district court decided this case based on the parties' motions for judgment on the administrative record. Our review is de novo. See Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006).

When, as here, an ERISA plan gives the plan administrator discretionary authority to interpret the terms of the plan and to determine a claimant's eligibility for benefits, we will uphold the decision unless it is arbitrary, capricious, or an abuse of discretion. Tsoulas v. Liberty Life Assurance Co. of Boston, 454 F.3d 69, 76 (1st Cir. 2006). Under that standard, the decision "must be upheld if there is any reasonable basis for it." Madera v. Marsh USA, Inc., 426 F.3d 56, 64 (1st Cir. 2005). Stated in different terms, we will uphold an administrator's decision "if the decision was reasoned and supported by substantial evidence," meaning that the evidence "is reasonably sufficient to support a conclusion and contrary evidence does not make the decision unreasonable." See Denmark v. Liberty Life Assurance Co. of Boston, --- F.3d ---, 2007 WL 914673, at *15 (1st Cir. Mar. 28, 2007).

MCS concluded that Morales had a mild pneumological condition that had become stable with treatment so that he no longer qualified for disability benefits. That decision was based on Dr. Ramirez's opinion, following his examination, and on consideration of all of the records in Morales's file. Morales argues that MCS used the wrong definition of disability, which was less favorable to him. Morales contends that the definition of disability in the Summary Plan Description ("SPD"), quoted by MCS in its letter terminating his benefits, is narrower than the definition of disability in the Plan. Morales further contends that MCS's use of

the SPD definition imposed a more onerous burden of proving disability than the Plan demanded.

ERISA imposes an important requirement on plan administrators and insurers to communicate accurately with plan participants and beneficiaries. See Bard, 471 F.3d at 244-45. Part of the communication requirement is that the SPD provide certain information "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Section 1022(b) specifies the information to be included in the summary. When the terms, language, or provisions of the SPD conflict with the plan, the language that the claimant reasonably relied on in making and proving his claim will govern the claim process. Bard, 471 F.3d at 245. The burden is on the claimant to show reasonable reliance and resulting prejudice. Id.

Although he asserts that the Plan's definition of disability is more favorable to him than the definition contained in the SPD, Morales does not show that he would have qualified for benefits under the Plan's definition.[4] As such, Morales has not

---

[4]The Plan defines disability as follows:
Total Disability or Totally Disabled: The complete inability of an Employee to perform substantially all of the material duties of his or her regular occupation as it is generally performed in the national economy, or perform another occupation for which the Employee is qualified and can earn at least 75% of pre-disability

shown that he reasonably relied on the Plan definition in making his claim for benefits and that the difference in definitions resulted in MCS's denying his claim. Therefore, as the district court decided, Morales has not sustained his burden of proof on this issue.[5]

Morales also contends that MCS was required to give the disability ruling by the Social Security Administration controlling weight because MCS required him to apply for social security benefits and then to reimburse the Plan for the amount he received from social security. Contrary to Morales's argument, however, "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000)). Morales offers no persuasive authority to support his

---

Compensation. The Covered Employee cannot engage in any other employment except as provided under the rehabilitation program described in Article 14.

The SPD provides in pertinent part:

Total Disability . . .
    After you have received the benefits of the plan for two years, you will be considered completely disabled if you cannot work in occupations or employment for which you are qualified or could be qualified in accordance to your academic preparation, training or experience.

[5]To the extent Morales also argues that he was misled by MCS's use of the definition in the SPD, that theory is not well developed and would also fail due to a lack of evidence that he was prejudiced.

theory that as a result of MCS's reimbursement requirement the social security ruling must be given controlling weight in MCS's decision-making process.[6]

Alternatively, Morales argues that the social security ruling governs because the definition of disability under the Social Security Act is more restrictive than the Plan's definition. To qualify for disability benefits under a plan, a claimant must satisfy the plan's definition of disability, not the definition of disability under the Social Security Act. Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003). For that reason, a related social security ruling "should not be given controlling weight except perhaps in the rare case in which the [social security] statutory criteria are identical to the criteria set forth in the insurance plan." Pari-Fasano, 230 F.3d at 420.

Aiming at the rare case, Morales asserts that the definition of disability under the Social Security Act is narrower than the Plan's definition so that the social security ruling should be given controlling weight here. He fails to cite the social security definitions on which he relies, however, or provide any analysis to support his theory. As MCS points out, another claimant

---

[6]Morales relies on Calvert v. Firstar Fin., Inc., 409 F.3d 286, 293-95 (6th Cir. 2005), which held that a social security ruling is one factor for the plan administrator to consider in making its disability determination. Morales has not shown that MCS refused to consider the social security ruling in making its own independent determination. See Denmark, 2007 WL 914673, at *20 (discussing Calvert).

was unable to show that a social security ruling in her favor was entitled to controlling weight for purposes of a disability determination by MCS under the same Plan. See Matias-Correa, 345 F.3d at 12. Therefore, Morales has not shown that his is the rare case where a related social security ruling should be given controlling weight.

Morales more generally attacks MCS's decision to terminate his benefits on the ground that the record lacks substantial evidence to support it. He asserts that the record does not include evidence that his medical condition changed or that he is now able to work. He faults MCS for failing to have him undergo a functional capacity evaluation and for failing to have him assessed by a vocational rehabilitation specialist. He also cites the lack of a labor market survey to show what work was available for him to do.

Morales's arguments show that he fails to understand that it is his responsibility to prove his claim. A claimant seeking disability benefits bears the burden of providing evidence that he is disabled within the plan's definition. See Wright v. R.R. Donnelley & Sons Co. Group Benefits, 402 F.3d 67, 77 (1st Cir. 2005). In addition, a plan administrator is not obligated to accept or even to give particular weight to the opinion of a claimant's treating physician. Black & Decker Disability Plan v. Nord, 538

U.S. 822, 831 (2003). Therefore, Morales bore the burden of showing that he continued to be disabled, as defined in the Plan.

MCS asked Morales to provide updated medical records to support his claim. The records he provided demonstrated that his hospitalizations stopped in early January of 2000 and that he had not needed hospital care since that time. Morales's treating physician confirmed that fact. Morales provided no records of any medical care during the period in question other than a list of medications he was taking. Dr. Volcker's opinion that Morales was unable to work was not entitled to any weight in the context in which it was offered.[7] The records Morales provided, along with the opinions of Dr. Ramirez and Dr. Ocasio, showed that Morales's pneumological condition was stable with treatment and supported MCS's conclusion that he was no longer disabled. Therefore, the district court correctly decided that MCS's termination of Morales's benefits was not arbitrary or capricious.

## III.

For the foregoing reasons, the district court did not abuse its discretion in denying Morales's motion for leave to amend

---

[7]In fact, even in the context of social security disability claims, where deference is ordinarily accorded to the opinions of treating physicians, see 20 C.F.R. § 404.1527(d)(2), no deference is given to a physician's opinion that a claimant is disabled or unable to work because that is not a medical opinion, see id. at § 404.1527(e)(1); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

his complaint and his request to conduct discovery.  In addition, MCS's decision to terminate Morales's disability benefits was not arbitrary or capricious.  Therefore, we uphold the district court's decision.

**Affirmed.**