Emma ORTIZ TORRES,
et al., Plaintiffs

v.

METROPOLITAN LIFE INSURANCE
CO., Defendants.

Civil No. 04–1967 (FAB).

United States District Court,
D. Puerto Rico.

July 19, 2007.

Ramon Colon–Olivo, San Juan, PR, for Plaintiffs.

Ramonita Perez–De–Gotay, Frank Gotay–Barquet, Gotay & Perez, P.S.C., San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is plaintiffs' motion for judgment on the administrative record (Docket No. 28), and defendant's opposition and cross-motion for judgment on the administrative record (Docket No. 32). For the reasons, discussed below, the Court **GRANTS** defendant's cross-motion and dismisses plaintiff's complaint.

## FACTUAL BACKGROUND

Emma Ortiz ("Ortiz") worked for Schering–Plough Corporation ("Schering") since March 21, 1988. Her last position at Schering was pharmaceutical operator. While working at Schering, Ortiz was a participant of a long-term disability ("LTD") plan (the "plan") administered by Metropolitan Life Insurance Company ("MetLife"). The plan provides that MetLife, as plan administrator, would have discretionary authority to interpret the

terms of the plan and to determine eligibility for and entitlement to plan benefits.

The plan provides for the payment of LTD benefits to a participant who becomes disabled. A participant is considered "disabled" when due to an injury or sickness, the participant requires the regular care and attendance of a physician and is unable to perform each of the material duties of his or her regular job. After the first twenty-four months of benefit payments, the participant must also be unable to perform each of the material duties of any gainful work or service for which he or she is reasonably qualified, taking into consideration training, education, experience, and past earnings.

Ortiz last worked for Schering on March 23, 1990. On September 26, 1990, Ortiz submitted a claim for LTD benefits under the plan. Ortiz's claim was based on her physician's diagnosis of cervico thoraco lumbrosacral myositis. On October 26, 1990, MetLife sent notice to Ortiz that her claim had been approved. On July 16, 1991, Dr. Hector Cases ("Dr.Cases"), a neurologist retained by MetLife, conducted an independent medical examination of Ortiz. Dr. Cases reported that although Ortiz suffered from a chronic moderate cervical myositis, chronic mild dorsal spasm and a chronic moderate LS myositis, she was still able to perform part time sedentary work.

On June 4, 1992, MetLife retained Crawford & Company ("Crawford") to conduct an independent vocational assessment of Ortiz. On June 29, 1992, Crawford submitted a report concluding that Ortiz retained sufficient transferable skills within her residual functional capacity to perform light duty work with salaries commensurate with her previous earnings and that she was not totally disabled according to the plan's definition. Nevertheless,

MetLife continued to pay LTD benefits to Ortiz.

On October 6, 1997, Ortiz underwent a functional capacity assessment by Dr. Rafael Sein ("Dr.Sein") at MetLife's request. Dr. Sein determined that Ortiz had a work capacity of sedentary level and that her physical condition could improve through a Work Conditioning/Work Hardening program.

On September 13, 2000, MetLife referred Ortiz's medical records to Dr. Jeffrey Kahn ("Kahn") for an independent medical evaluation. Dr. Kahn reported that the medical evidence he reviewed showed degenerative anterior spondylosis and straightening of normal lumbar lordosis, but that the cervical changes would not affect Ortiz's neurological function and that the lumbar x-rays were normal. Dr. Kahn concluded that the medical test results in the administrative record did not support the level of work capacity listed by the attending physician on the most recent physical capacities evaluation, which he thought exaggerated the degree of functional limitations. Dr. Kahn further stated that he did not know why Ortiz's benefits had not been terminated or why she was not given vocational training or a different job placement after the 1992 transferable skills analysis and the 1997 functional capacity evaluation.

MetLife did not terminate Ortiz's benefits upon receiving Dr. Kahn's report, but continued to request information from Ortiz and her attending physicians in order to evaluate her condition fully. This included a statement from Dr. Jose Camino ("Camino"), which indicated Ortiz had been under his care since 1991 and that she had been completely disabled and unable to do housework, much less any gainful employment, since May 1990. Dr. Camino further stated that Ortiz suffered from fibromyalgia, major depression with

panic disorder, radiculopathy, lumbar spondilosis, calcified tendonitis and moderate arterial hypertension. The statement did not include any objective medical data to support the diagnosis.

In October 2002, MetLife retained the services of Dr. John D. Thomas ("Thomas"), to conduct another independent medical evaluation of Ortiz's condition. On October 29, 2002, Dr. Thomas issued a report stating that he had reviewed Dr. Kahn's report and the medical evidence obtained thereafter and that he could not find evidence to support a severe impairment that would completely preclude Ortiz from performing sedentary work.

On January 23, 2003, MetLife notified Ortiz by letter that she was no longer considered disabled under the plan and was no longer entitled to disability benefits. MetLife indicated that it would terminate her benefits effective February 1, 2003. On February 19, 2003, MetLife received a letter from Ortiz appealing the decision to terminate her LTD benefits and submitting new medical evidence from her doctors. After MetLife received the new evidence, it referred it to Dr. Warren Silverman ("Silverman") for an independent evaluation. Dr. Silverman concluded that there was no evidence to alter the findings made by Drs. Kahn and Thomas that Ortiz was able to perform sedentary work. On June 20, 2003, MetLife sent Ortiz a letter upholding the decision to terminate her LTD benefits.

## DISCUSSION

■ "ERISA cases are generally decided on the administrative record without discovery, and 'some very good reason is needed to overcome the presumption that the record on review is limited to the record before the administrator.'" *Morales–Alejandro v. Medical Card System, Inc.,* 486 F.3d 693, 698 (1st Cir.2007)(*quot-*

*ing Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 23 (1st Cir.2003)). When reviewing a plan administrator's decision to terminate LTD benefits, the Court employs an "arbitrary and capricious" standard of review if the administrator has discretionary authority under the plan to interpret its terms and to determine eligibility for, and entitlement to, plan benefits. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Matias–Correa v. Pfizer, Inc.,* 345 F.3d 7, 11–12 (1st Cir.2003). Under this extremely limited scope of review, the sole issue for the Court to determine is whether the record shows that the plan administrator had substantial evidentiary grounds for a reasonable decision in its favor. *Id.* The fact that the Court may disagree with the insurer's decision, or would have reversed the same under a de novo standard, is inconsequential under the "arbitrary and capricious" analysis. *Id.*

Ortiz argues that MetLife's determination to terminate her LTD benefits was arbitrary and capricious because she claims it relied solely on the medical opinion a medical expert who did not examine her and whose opinion is contradicted by the medical evidence that was added to her file during the previous twelve years. Ortiz also indicates that the administrator should have given deference to her treating physician.

■ Her arguments, however, fail to establish that MetLife's decision was arbitrary and capricious. It is settled that the opinion of a treating physician is not entitled to special deference. *Orndorf v. Paul Revere Life Ins. Co.,* 404 F.3d 510, 526 (1st Cir.2005)(*citing Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). "When other evidence sufficiently contradicts the view of a treating physician, that view appropriately may be rejected." *Leahy v.*

*Raytheon Co.*, 315 F.3d 11, 21 (1st Cir. 2002). The record in this case contains at least three medical opinions concluding that Ortiz can perform sedentary work and is, thus, not disabled under the terms of the plan. These evaluations indicate that they did take into consideration the opinion of the treating physician, but that it lacked proper support because no test results were included that could evidence Ortiz's alleged ailments. The record also contains a vocational assessment report which states that Ortiz has the residual functional capacity to perform light duty work.

Accordingly, the Court finds that there is sufficient evidence on the record to support MetLife's decision to terminate Ortiz's LTD benefits and that it was not arbitrary or capricious.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Ortiz's motion for judgment on the administrative record (Docket No. 28) and **GRANTS** MetLife's cross-motion for judgment on the administrative record (Docket No. 32). Judgment shall enter accordingly.

IT IS SO ORDERED.