**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00071-CV**
_____

**WATERSTONE ON LAKE CONROE, INC. AND STEVE BOWEN,**
**Appellants**

**V.**

**DEE WILLIAMS AND ANDY WILLIAMS, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-09-10736-CV**

**MEMORANDUM OPINION**

Waterstone on Lake Conroe, Inc. ("Waterstone") and Steve Bowen appeal

from the trial court's order denying a motion to compel arbitration in a suit brought

by Dee and Andy Williams ("the Williamses"). The Williamses' suit includes claims

arising from a new home construction agreement they entered into with Virgin

Homes, Inc. ("Virgin"). In its order denying arbitration, the trial court found that

1

Waterstone and Bowen are not entitled to arbitration because they are not signatories on the contract containing the arbitration provision.

In issue one, Waterstone and Bowen complain that the trial court erred by denying the motion to compel because the scope of the arbitration agreement includes all claims arising from or relating to the Williamses' and Virgin's contract; any breach of that contract; the construction of the home; and any acts or omissions by Virgin or by Virgin's officers, directors, or agents. Waterstone and Bowen contend that because the arbitration agreement includes claims against officers and agents of Virgin, agents and officers need not be signatories to compel arbitration. In issue two, Waterstone and Bowen argue that estoppel principles require arbitration because the Williamses' claims against Waterstone and Bowen are intertwined with the purchase agreement containing the arbitration agreement, and because the Williamses' allegations involve substantially interdependent and concerted misconduct by the signatory and nonsignatories.

Because Waterstone and Bowen are non-signatories who may compel arbitration and because the Williamses' factual allegations against Waterstone and Bowen are factually intertwined with the purchase agreement that contains the arbitration provision, we conclude the trial court erred by denying Waterstone's and Bowen's motion to compel. Accordingly, we reverse the trial court's order denying

2

arbitration and remand to the trial court with instructions to enter an order granting Waterstone's and Bowen's motion to compel.

Background

In September 2012, the Williamses entered into a purchase agreement with Virgin for the construction of a new home. The Williamses and Bowen, the President of Virgin, signed the purchase agreement. The purchase agreement contains a binding arbitration agreement that states:

> The parties agree that all controversies, claims or matters in question arising out of or relating to (i) this Contract, (ii) any breach or termination of this Contract, (iii) the construction of the Home, (iv) any acts or omissions by Virgin Homes, Inc. (and its officers, directors, or agents), and/or (v) any actual or purported representations or warranties, express or implied, relating to the Property and/or the Home (herein referred to collectively as a "Dispute") shall be subject to binding arbitration.

The arbitration agreement states that it "shall be governed by Texas law and the U.S. Arbitration Act . . . , to the exclusion of any provisions of State Law that are inconsistent with the application of the Federal Act." The arbitration agreement further provides that the award of the arbitrator "shall be rendered in accordance with [F]AA rules then in effect."

Attached to the purchase agreement is an exhibit that lists the standard allowances for the construction, and included in the list is a boat dock with an allowance of $38,100, which includes a boat slip, two jet ski lifts, deck housing, a

3

water line to the dock, a separate electrical box at the rear of the house, and electric lines to the dock area. Also included is a standard allowance of $4,400 for the construction of a sidewalk from the rear of the home to the boat dock area.

The Williamses filed suit against Waterstone, Bowen, Virgin, and Butch's Lake Conroe Bulkhead ("Butch's") for property damages resulting from deficiencies in the construction and repair of the bulkhead/retaining wall built in the Williamses' backyard by or at the direction of one or more of either Bowen, Waterstone, Virgin, or Butch's. The Williamses' suit includes claims arising from the purchase agreement they entered into with Virgin. The signatories of the purchase agreement are the Williamses and Bowen, as President of Virgin. The Williamses sued the defendants for breach of the warranty of good and workmanlike performance, violations of the Deceptive Trade Practice Act, in accordance with Chapter 27 of the Texas Property Code, and for common law negligence. While the Williamses maintained that because there is no mention of the bulkhead/retaining wall in the purchase agreement, it is not subject to the purchase agreement, they sued Virgin for breach of contract in the alternative. The Williamses sued Waterstone for negligent misrepresentation, and sued Bowen for being vicariously liable for the acts and omissions of Virgin and Waterstone because Bowen has ownership and control of both corporations.

Virgin, Waterstone, and Bowen filed a joint motion to compel arbitration, arguing that although Bowen and Waterstone are nonsignatories to the arbitration agreement, the Williamses are required to arbitrate with all three defendants because Bowen is an officer of Virgin and Waterstone is Virgin's agent. In their response to the defendants' motion to compel, the Williamses argued that the bulkhead/retaining wall is not part of the purchase agreement and thus not subject to arbitration.

The trial court conducted a hearing on the motion to compel. During the hearing, counsel for the Williamses argued that the Williamses' claims do not fall under the purchase agreement and thus are not subject to the arbitration provision. Plaintiffs' counsel explained that he had been unable to determine who performed the work on the retention walls. Plaintiffs' counsel also noted that the purchase agreement contained an exhibit that listed the standard allowances, and the exhibit counsel referenced lists fence, backyard sod, and a backyard sprinkler system as items that are not considered to be part of the purchase agreement. According to plaintiffs' counsel, although the retaining wall is not in the list of excluded items, it is similar to the items excluded.

Counsel for the defendants argued that the Williamses' lawsuit alleged that Virgin, Waterstone, and Bowen made errors while building a retention wall in the back of the Williamses' property, and that the Williamses' claims fall within the

5

scope of the arbitration agreement contained in the contract. Defense counsel argued that the arbitration agreement extends to Virgin's officers, directors, or agents, and that the Williamses sued all of the defendants together based on the actions of Virgin in constructing the home and the retaining walls. Defense counsel further argued that "[b]ut for that contract[,] these retaining walls would not have been built[,]" and all of the duties that the Williamses complain about arise by virtue of the contract because they concern the acts or omissions relating to the work performed. Defense counsel argued that because all of the parties are being sued on theories relating to and arising under the contract, the claims fall within the scope of the arbitration agreement, and the trial court should order all the parties to arbitrate.

After hearing the parties' arguments, the trial court granted Virgin's motion to compel arbitration. The trial court found that the arbitration agreement is binding on the Williamses and Virgin because they are parties to the agreement. The trial court denied Waterstone's and Bowen's motion to compel because they are not signatories on the contract containing the arbitration agreement. The trial court stated that it was "not persuaded to expand the scope of the arbitration agreement to include any parties to the lawsuit that are not also parties to the contract and have not agreed to the arbitration in writing, as required by statute." The trial court denied

Waterstone's and Bowen's request for findings of fact and conclusions of law. Waterstone and Bowen timely filed this interlocutory appeal.

Standard of Review and Applicable Law

This is an appeal pursuant to section 51.016 of the Texas Civil Practice and Remedies Code, which authorizes interlocutory appeals of matters subject to the Federal Arbitration Act (FAA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015); *see also* 9 U.S.C.A. § 16(a)(1)(C). A party attempting to compel arbitration under the FAA must establish that there is a valid arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding). There is a presumption favoring agreements to arbitrate under the FAA, but the presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root*, *Inc*., 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding). If the party seeking to compel arbitration proves that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig.

7

proceeding). The trial court's determination of the arbitration agreement's validity is a question of law which we review *de novo*. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. In determining the validity of the arbitration agreement under the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). We may not expand upon the terms of the contract or tolerate a liberal interpretation of the contract by reading into it a voluntary agreement to arbitrate when one does not exist. *Aldridge v. Thrift Fin. Mktg, LLC*, 376 S.W.3d 877, 883 (Tex. App.—Fort Worth 2012, no pet.). The plain meaning of the contractual language must clearly indicate the intent to arbitrate. *Id.*

"Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide." *Rubiola*, 334 S.W.3d at 224. Although the FAA generally does not require parties to arbitrate when they have not agreed to do so, both federal and Texas courts have recognized that under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement. *Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 738. Although arbitration agreements apply to non-signatories only in rare

8

circumstances, the question of who is bound by an arbitration agreement is ultimately a function of the intent of the parties, as expressed in the terms of the agreement. *Rubiola*, 334 S.W.3d at 224. Courts have recognized six theories for binding a non-signatory to an arbitration agreement: incorporation by reference, assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary. *Bridas S.A.P.I.C v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003)

Once the party seeking to compel arbitration establishes that a valid agreement exists, the trial court must then determine whether the arbitration agreement covers the claims at issue. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). The determination of whether the arbitration agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation. *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex. App.—Fort Worth 2003, no pet.). "If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.* at 411. The court's primary concern in construing the contract is to ascertain the true intentions of the parties as expressed in the contract. *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

In determining whether the trial court abused its discretion by denying Waterstone's and Bowen's motion to compel, we review the trial court's

interpretation of the parties' arbitration agreement *de novo*. *See Jabri*, 108 S.W.3d at 410-11. Applying contract construction principles, we must review the entire arbitration agreement to determine whether it is so worded that it can be given a definite legal interpretation. *See id.* at 412. When a dispute involving an arbitration agreement is brought to court for a resolution, the trial court must determine whether the parties agreed to submit a particular issue to arbitration. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex. App.—El Paso 2012, no pet.) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986); *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996).

The arbitration agreement provides that the "parties agree that all controversies, claims[,] or matters in question arising out of or relating to . . . any acts or omissions by Virgin Homes, Inc. (and its officers, directors, or agents) . . . shall be subject to binding arbitration." The record shows that Virgin is a signatory of the arbitration agreement and that Bowen signed the arbitration agreement as President of Virgin. The record clearly shows that Bowen is an officer of Virgin, and thus, a non-signatory party to the arbitration agreement under the terms of the agreement. *See Rubiola*, 334 S.W.3d at 224-25; *see also Bridas S.A.P.I.C*, 345 F.3d

10

at 356 (noting that ordinary principles of contract and agency law may be called upon to bind a non-signatory to an agreement). Because the arbitration agreement expressly provides that officers are non-signatories that are considered parties to the agreement, we conclude that Bowen may compel arbitration under the agreement. *See Rubiola*, 334 S.W.3d at 224-25.

The record further shows that Bowen is the President of Waterstone and that Waterstone is the developer of the subdivision in which Virgin constructed the Williamses' home. Waterstone also developed the man-made canals in the subdivision. In their petition, the Williamses asserted that it is undetermined whether Virgin or Waterstone directed, authorized, or supervised the construction of the bulkhead/retaining wall. The Williamses' suit is for property damages resulting from deficiencies in the construction and repair of the bulkhead/retaining wall. The Williamses asserted that the defendants and their subcontractors, agents, employees, and representatives for which the defendants are liable had a duty to exercise proper care in the construction of the bulkhead/retaining wall. The Williamses further asserted that Bowen is vicariously liable for the acts and omissions of Virgin and Waterstone because the corporations were organized and operated as a mere tool or business conduit of Bowen, the alter ego. According to the Williamses, there was such a unity of Virgin, Waterstone, and Bowen that the separateness had ceased and

11

the defendants and the defendants' agents or officers are liable via respondeat superior.

In its motion to compel, Waterstone asserted that under the Williamses' agency theory, the Williamses are obligated to arbitrate their claims, and further asserted that the Williamses are equitably estopped from refusing to arbitrate with Waterstone because the Williamses sued Waterstone based on their mistaken belief that Waterstone had some role in constructing the improvements on the Williamses' property while acting as an agent of Virgin. Waterstone contends that equitable estoppel permits it to compel arbitration because the sole source of any duties owed to the Williamses is derived from the contract and because the issues between the parties are intertwined with the purchase agreement containing the arbitration provision.

Equitable estoppel allows a non-signatory to compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). The Fifth Circuit explained that a signatory to an arbitration agreement "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the

agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson*, 210 F.3d at 528. We review a trial court's decision not to apply equitable estoppel for an abuse of discretion. *Grigson*, 210 F.3d at 528. To constitute an abuse of discretion, the trial court's decision must be either premised on an application of the law or an assessment of the evidence that is clearly erroneous. *Id.*

To determine whether the Williamses' claims against Waterstone are so intertwined with and dependent upon the purchase agreement that the arbitration agreement shall be given effect, we compare the operative facts for purposes of the motion to compel arbitration with the purchase agreement. *See id.* at 528-29. The purchase agreement provided that Virgin was to construct a single-family residence in substantial compliance with plans prepared by Virgin in accordance with the Standard Design Features and the Standard Allowances as indicated in the exhibits attached to the agreement. The attached exhibit that lists the standard allowances for the construction includes a boat dock with an allowance of $38,100, which includes a boat slip, boat lift, two jet ski lifts, deck housing, a water line to the dock, a separate electrical box at the rear of the house, and electric lines to the dock area. Also included is a standard allowance of $4400 for the construction of a sidewalk from

the rear of the home to the boat dock. The only items specifically excluded from the purchase agreement were the fence, backyard sod, and backyard sprinkler system.

The purchase agreement also references a Limited Warranty provided by the builder and states that Virgin's liability under the contract for the construction of the home is confined to the statutory warranties and the building and performance standards in the Texas Property Code, as well as the performance standards and remedies provided in the Limited Warranty. The Limited Warranty specifically excludes improvements not part of the home itself, including, but not limited to, boundary and/or retaining walls and bulkheads.

In their petition, the Williamses assert that it is undetermined whether Virgin or Waterstone directed, authorized, or supervised the construction of the bulkhead/retaining wall. The Williamses further assert that there was such a unity between Virgin and Waterstone that the separateness had ceased. In their response to the motion to compel, the Williamses assert that they have independent claims against Waterstone, but also assert that they have been unable to determine whether Waterstone played any role in the construction or the failure of the bulkhead/retaining wall. While the Williamses also requested discovery to determine who actually performed the work, such an inquiry to identify potential defendants and determine each defendant's liability is inappropriate because determinations of

14

ultimate liability ordinarily must be answered during the arbitration proceeding. *See In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009) (orig. proceeding).

The arbitration agreement contained in the contract provides that "all controversies, claims or matters in question arising out of or relating to" the contract, the construction of the home, and/or any acts or omissions by Virgin and its agents shall be subject to binding arbitration. We hold that the Williamses' claims against Waterstone are so intertwined with and dependent upon the purchase agreement and the Williamses' claims against Virgin, that it would be impractical to resolve the Williamses' claims against Virgin without simultaneously resolving the claims against Waterstone. *See generally Grigson*, 210 F.3d at 528-29. We conclude that equitable estoppel entitles Waterstone to compel arbitration, and that the trial court abused its discretion by determining that Waterstone was not entitled to arbitration because it is a non-signatory. *See id.* at 528.

Having concluded that Waterstone and Bowen are non-signatories who may compel arbitration, we must also address the question of whether the Williamses' claims fall within the scope of the arbitration agreement. *See Rubiola*, 334 S.W.3d at 225. At the hearing on the motion to compel, the Williamses asserted that their claims do not fall under the purchase agreement and thus are not subject to the arbitration provision, because the retaining wall is not specifically mentioned in the

15

purchase agreement and because it is similar to the items specifically excluded from the agreement as referenced in the standard allowances exhibit. Waterstone and Bowen argued that but for the contract, the retaining walls would not have been built, and further argued that all of the duties that the Williamses complain about arise by virtue of the contract.

In determining whether the Williamses' claims fall within the scope of the arbitration agreement, we examine the complaint's factual allegations rather than the legal causes of action asserted. *See FirstMerit Bank*, N.A., 52 S.W.3d at 754. If liability arises solely from the contract or must be determined by reference to it, then the claims must be submitted to arbitration. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding). "A claim is not subject to arbitration only if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract." *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 77 (Tex. App.—Texarkana 2014, no pet.).

The arbitration agreement provides that the "parties agree that all controversies, claims[,] or matters in question arising out of or relating to . . . this Contract, . . . the construction of the Home, . . . any acts or omissions by Virgin Homes, Inc. (and its officers, directors, or agents), and/or . . . any actual or purported

representations or warranties, express or implied, relating to the Property and/or the Home . . . shall be subject to binding arbitration." Because the arbitration agreement uses the terms "related to" to define the scope, we interpret the agreement broadly. *See id.* at 78. We note that in addition to asserting claims for breach of the warranty of good and workmanlike performance, violations of the Deceptive Trade Practices Act, and common law negligence, the Williamses sued Waterstone for negligent misrepresentation and claimed that Bowen is vicariously liable for the acts and omissions of Virgin and Waterstone.

The Williamses brought suit against the defendants for property damage resulting from alleged deficiencies in the construction and repair of the bulkhead/retaining wall. The Williamses assert that the retaining wall is not part of the purchase agreement because it is not specifically mentioned and because it is similar in nature to the items that are specifically excluded from the purchase agreement. However, the facts alleged in support of the Williamses' claims are not completely independent of the purchase agreement. *See id.* at 77. The purchase agreement includes the construction of the home, as well as other improvements that include a boat dock and a sidewalk from the rear of the home to the boat dock. Although the purchase agreement does not specifically mention or exclude the bulkhead/retaining wall, the Limited Warranty that is referenced in the purchase

agreement specifically excludes boundary and/or retaining walls and bulkheads. The Limited Warranty also provides that the retaining wall and bulkhead are improvements that are not part of the home itself.

We conclude that the Williamses' allegations concerning the construction of the bulkhead/retaining wall arise out of or relate to the purchase agreement. We further conclude that because the Williamses' factual allegations against Waterstone and Bowen are factually intertwined with the purchase agreement, the claims fall within the scope of the arbitration agreement. *See id.* Having concluded that Waterstone and Bowen are non-signatories who may compel arbitration and that the Williamses' claims fall within the scope of the arbitration agreement, we further conclude that the trial court abused its discretion by denying Waterstone's and Bowen's motion to compel arbitration. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643. We sustain issues one and two. We reverse the trial court's order denying Waterstone's and Bowen's motion to compel and remand this case to the trial court with instructions to enter an order granting Waterstone's and Bowen's motion to compel arbitration and to stay the proceeding pending the results of arbitration.

REVERSED AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 24, 2017
Opinion Delivered August 3, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.