# United States Court of Appeals
## For the First Circuit

No. 02-1852

NYDIA ESTADES-NEGRONI,

Plaintiff, Appellant,

v.

THE ASSOCIATES CORPORATION OF NORTH AMERICA,
ASSOCIATES FINANCIAL SERVICES,
ASSOCIATES FIRST CAPITAL CORPORATION,
ASSOCIATES CORPORATION OF PUERTO RICO, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Alfredo Fernández-Martínez, with whom José A. Fernández-Paoli,
and Delgado & Fernández, LLP were on brief, for appellant.
Heidi L. Rodríguez-Benítez, with whom Jorge I. Peirats, and
Pietrantoni Méndez & Alvarez, LLP were on brief, for appellees.

July 28, 2004

**TORRUELLA**, **Circuit Judge**.  Plaintiff-appellant Nydia Estades Negroni ("Estades") brought an action against the Associates Corp. of North America ("Associates Corporation"), Associates Financial Services ("Associates"), Associates First Capital Corp., and Associates Corporation of Puerto Rico (collectively "defendants"), alleging unlawful discrimination because of her age and disability in contravention of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2003), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182-12189 (2003), and several provisions of Puerto Rico law. The district court granted summary judgment in favor of the defendants; Estades now appeals.  After careful review, we affirm.

## I.  Background[1]

Estades was hired by Associates in 1986.  Between 1989 and 1990, she became aware of financial irregularities regarding loans carried out by some of her co-workers in Associates' Arecibo I branch.  In 1992, Estades reported the irregularities to Juan Irizarry, Group Assistant Vice President at Associates, through his secretary, Haydeé López.  As a result of Estades's allegations of fraud, several audits were performed that resulted in the firing of several of her co-workers, including her supervisors, in 1993.

---

[1] We largely reproduce the facts as stated in the district court's opinion, Estades Negroni v. Assocs. Corp. of N. Am., 208 F. Supp. 2d 144, 145 (D.P.R. 2002), but present them in the light most favorable to the plaintiff. Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003).

After she reported the irregularities, Estades alleges she experienced a "pattern of discrimination." According to Estades's brief, "her supervisors were bothered by Estades's whistle-blowing activities." Estades contends that, as a result, her workload was increased to the point of being "excessive." Estades also claims that she requested her workload be reduced to its original level or that an assistant be hired; her employer refused both requests. She also alleges that the director of human resources, at least one of her supervisors, and several of her co-workers at Associates made "age motivated remarks."[2]

In March 1996, Estades experienced chest pains and visited a doctor, who diagnosed her with severe depression. On March 21, 1996, Estades, following her doctor's recommendation, reported to the State Insurance Fund ("SIF"). The SIF examined Estades and found her to be disabled; she was placed on leave to receive medical treatment.

On April 9, 1996, Estades requested short-term disability benefits under Associates' employee benefits policy (the "Policy"). The Policy was administered by Associates Corporation and managed

---

[2] Estades's brief extensively cites to her own deposition and those of Irizarry and Wilfredo Ortíz Guerra in cataloguing the allegedly ageist remarks made by her supervisors and co-workers. Although our prior opinion was withdrawn to permit consideration of several of appellant's evidentiary submissions in English, our re-examination of the case leads us to affirm dismissal of the ADEA claim based on the alternative rationale relied upon by the district court.

by Prudential Healthcare Group ("Prudential"). Estades received short-term disability benefits for the maximum period possible, from March 1996 to September 1996.

On May 2, 1996, Carmen Hernández, a social worker with the SIF, interviewed Estades in connection with her request for treatment. SIF referred Estades to Dr. Pablo Pérez Torredo, a psychiatrist, for evaluation. On June 18, 1996, Dr. Pérez Torredo issued his final psychiatric report, diagnosing Estades with adaptive disorder with mixed emotional symptoms and recommending that she receive additional psychotherapeutic treatment.

On August 23, 1996, Associates notified Estades that her short-term disability benefits would expire on September 27, 1996. Associates further informed Estades of her right to apply for long-term disability benefits ("LTD") and recommended that she also apply for Social Security Disability Insurance benefits ("SSDI") to supplement her income.

On September 25, 1996, Estades applied for LTD. In her application, Estades certified that her emotional state did not allow her to concentrate on or to perform her job functions. Furthermore, she indicated that the date for her return to work was not available, and that she did not expect to return to any other occupation.

In a letter dated January 7, 1997, Prudential denied Estades's request for LTD based on lack of medical evidence

supporting her claim that her condition kept her from performing her duties as Branch Operations Manager. The denial letter informed her of her right to appeal the denial of LTD. Estades appealed Prudential's decision in a letter dated February 25, 1997.

On March 19, 1997, Estades's employment with Associates was terminated with an effective date of February 28, 1997, because her short-term disability benefits had expired, her application for LTD had been denied, and she had not reported to work. On April 15, 1997, Prudential reconsidered its denial of LTD and approved Estades's request retroactively to September 18, 1996. Estades was reinstated in her employment with Associates with LTD status. As part of her LTD benefits, Estades was entitled to receive 60 percent of her salary while undergoing treatment. On May 2, 1997, Estades sent a letter to Associates stating her desire to return to work on June 1, 1997.

Prudential informed Estades that if her recovery was delayed she could be required to apply for SSDI. She applied, and on July 7, 1997, she was granted SSDI retroactively to September 1996. The Social Security Administration found that, under its rules, she had become disabled on March 20, 1996.

On April 29, 1998, Aetna US Healthcare ("Aetna"), Associates' new health insurance carrier, sent Estades a letter stating that, based on the medical information in their possession, her claim for LTD had been approved. Aetna further informed

Estades that, under a plan provision, she was required to file for SSDI benefits and to provide them with proof of application. The letter further informed Estades that failure to comply would result in suspension and termination of benefits.

Rather than comply with Aetna's request, Estades told Aetna to ask Prudential for a copy of her SSDI award letter. Estades stated that she refused to provide Aetna with a copy of the letter because "they had been so bad to her."

On June 2, 1998, Aetna sent Estades a second letter requesting that she inform the company of the status of her SSDI application. On August 11, 1998, Aetna sent Estades a letter informing her that her LTD benefits were terminated effective July 31, 1998, because Aetna had not received from Estades any proof that she had at least applied for SSDI. Aetna further informed Estades that she was entitled to petition for a review of that decision within sixty days. She appealed, but the appeal was denied on October 1, 1998, because Aetna had not received a copy of her SSDI award letter. After October 1, 1998, Estades did not make any further efforts to obtain LTD. Estades has not contacted Associates regarding her availability or desire to return to work since her LTD was terminated in August 1998.

Estades is currently undergoing psychiatric treatment and has not made any attempt to find another job because her psychiatrist has told her she is still unable to work.

On June 5, 1998, Estades filed a complaint against defendants alleging that they violated the ADEA and the ADA, and raising supplemental law claims under Puerto Rico Law.[3]

The defendants moved for summary judgment on all claims. The motion was referred to a magistrate judge, who recommended that the court grant the motion for summary judgment. Estades filed her objections to the report and recommendation.

On May 30, 2002, the district court issued an opinion and order adopting the magistrate judge's report and recommendation and dismissing Estades's causes of action under the ADEA and the ADA. The district court dismissed the supplemental state law claims without prejudice because no federal claims to ground original jurisdiction remained before the court. Estades now appeals the district court's grant of summary judgment and dismissal of her state claims.

## II. <u>Analysis</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). We review a grant of summary judgment de novo, construing the record in the light most favorable to Estades,

---

[3] Plaintiff filed her complaint before Aetna terminated her LTD benefits.

the non-movant.  <u>Rosenberg</u>, 328 F.3d at 17.  We may affirm the district court's decision on any grounds supported by the record. <u>Rodríguez</u> v. <u>Smithkline Beecham</u>, 224 F.3d 1, 5 (1st Cir. 2000).

## A.  <u>Age Discrimination Claim</u>

Estades argues that the district court erred in granting summary judgment on the ADEA claim because she presented direct evidence of age discrimination.  In the alternative, Estades claims summary judgment should not have been granted with regard to the prima facie case because a genuine issue of material fact exists regarding whether she was actually or constructively discharged.

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  In an ADEA case, the plaintiff bears the burden of proving [s]he would not have been discharged "but for [her] age."  <u>Serrano-Cruz</u> v. <u>DFI P.R., Inc.</u>, 109 F.3d 23, 25 (1st Cir. 1997).  It goes without saying that a plaintiff's failure to present a triable question of material fact as to her having suffered an adverse employment action dooms an ADEA claim from the start.  Under the circumstances of this case, we begin, therefore, by considering whether the record supports her claim to have suffered an adverse employment action at the hands of Associates.

When she first became ill, Estades applied for and obtained short-term disability benefits under Associates' employee benefits policy.  Before those benefits expired, Associates

-8-

notified Estades that she could apply for long-term disability benefits and recommended that she apply for SSDI. The insurer, Prudential, at first denied her request for LTD, but notified her of the right to appeal which she exercised. As a matter of fact, Estades's employment with Associates was terminated as of February 28, 1997. Once Estades obtained a favorable appeal of her LTD denial on April 15, 1997, she was reinstated retroactively and with benefits.

We find that this sequence of events does not contain a discharge actionable under the ADEA. Neither do Estades's subsequent difficulties with AETNA, ultimately resulting in the termination of her long-term disability benefits, establish that Associates discharged her. Accordingly, we affirm the dismissal of Estades's ADEA claim, agreeing with the district court that she failed at the threshold to support the claim that she suffered an adverse employment action.

## B. **Failure to Accommodate Claim**

Estades also claims that Associates violated the ADA by refusing to grant the accommodations she requested, namely reduction of her workload or provision of an assistant.[4] The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard

---

[4] Neither Estades's complaint nor her briefs before this court present any claim that she was discharged because of her disability. Rather, she focuses on the issue of accommodation.

-9-

to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employer violates the ADA if it "knows of a disability yet fails to make reasonable accommodations." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). To survive summary judgment on her "reasonable accommodation claim, [Estades] must produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the ADA, (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [Associates], despite knowing of [Estades]'s disability, did not reasonably accommodate it." Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003). We focus our attention on the third prong: whether Associates knew of Estades's disability yet failed to accommodate her.[5]

Before she was diagnosed with depression, Estades requested a reduced workload or the aid of an assistant. Under the ADA, requests for accommodation must be express and must be linked to a disability. See Cruz Carrillo v. AMR Eagle, Inc., 148 F.

---

[5] Estades also discusses her qualification to perform the job. The district court states that "Estades failed to proffer sufficient evidence that she could perform her duties with or without any reasonable accommodations as required by the ADA," but makes no further comment on this prong. Estades Negroni, 208 F. Supp. 2d at 148. Because we find Estades failed to present sufficient evidence on the third prong, we need not address whether she could perform her duties. Cf. Rocafort, 334 F.3d at 119 ("assum[ing], without deciding," that defendant met his burden with regard to the first two prongs where plaintiff failed to meet burden on the third prong).

Supp. 2d 142, 146 (D.P.R. 2001). An employer need not provide accommodations where it does not know an employee has a disability. See Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."); see also EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, FEP (BNA) 405: 7601, at 7605-06 (March 1, 1999) ("before addressing the merits of the accommodation request, the employer needs to determine if the individual's medical condition meets the ADA definition of 'disability,' a prerequisite for the individual to be entitled to a reasonable accommodation"), available at http://www.eeoc.gov/docs/accommodation.html. Associates did not know Estades was disabled when she requested the accommodation -- she had not yet been diagnosed with a disability at the time she sought a reduced workload or an assistant. Although Estades argues that her depression was evident when she requested the accommodation, the record does not support this claim. Finally, there is no evidence that the request was expressly repeated after Estades was diagnosed with a mental disability.

We uphold the grant of summary judgment on the ADA claim because Associates was unaware of Estades's disability when it denied her requested accommodation.

## C.  <u>State Law Claims</u>

The district court acted "well within its broad discretion" in refusing to exercise supplemental jurisdiction and dismissing without prejudice the state law claims because no federal claims remained.  <u>Lares Group, II</u> v. <u>Tobin</u>, 221 F.3d 41, 45 (1st Cir. 2000).

## III.  <u>Conclusion</u>

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

**<u>Affirmed</u>**.