# United States Court of Appeals
## For the First Circuit

No. 16-1307

DEBRA TROIANO,

Plaintiff, Appellant,

v.

AETNA LIFE INSURANCE COMPANY and
GENERAL DYNAMICS CORPORATION LONG TERM DISABILITY PLAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Lipez, and Barron,
Circuit Judges.

J. Scott Kilpatrick, with whom Mason J. Waring and Chisholm
Chisholm & Kilpatrick LTD were on brief, for appellant.
Jonathan C. Bond, with whom Miguel A. Estrada, Gibson, Dunn
& Crutcher LLP, Kenneth J. Kelly, Scarlett L. Freeman, and Epstein
Becker & Green, P.C. were on brief, for appellees.

December 16, 2016

**LYNCH**, <u>**Circuit Judge**</u>. This lawsuit arises from a dispute between an ERISA disability plan administrator and a beneficiary over the amount by which the monthly disability payments made to the beneficiary should be offset by her other monthly income from Social Security. The administrator maintains that the disability payments must be offset by the gross (pre-tax) amount of Social Security income, while the beneficiary argues that the payments must be offset by the net (post-tax) amount of Social Security income. The district court found for the administrator, noting that its interpretation of the Plan language to allow for a gross offset was entitled to deference and was, in any event, ultimately reasonable. In addition to contesting this decision, the beneficiary complains that the district court abused its discretion when it denied the beneficiary's broad requests for discovery. Having made a number of assumptions in the beneficiary's favor, we affirm. To be clear, the dispute is not about whether the Social Security income may offset the disability payments. It is about whether the administrator may use the simple gross amount of the Social Security payments for offset purposes.

I.

Plaintiff Debra Troiano is a former employee of Electric Boat Corporation, a subsidiary of defendant General Dynamics Corporation ("GDC"). While working there from 1988 to 2003, Troiano participated in GDC's long-term disability ("LTD") Plan,

which was funded and administered by defendant Aetna Life Insurance Company ("Aetna").

A.  The Plan's Structure and Documents

GDC's LTD Plan is an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  The terms of the Plan are set forth in four relevant documents: (1) the Group Policy, which contains general terms and conditions governing the Plan; (2) the Summary of Coverage, which details the LTD benefits; (3) the Booklet, which describes the group coverage plan; and (4) the Summary Plan Description ("SPD").  GDC issued the SPD in compliance with ERISA, which requires a plan to provide information "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  Id. § 1022(a).

The Plan itself vests Aetna with broad authority to exercise discretion in administering the Plan.  The Group Policy explains that Aetna is a fiduciary under ERISA and has "discretionary authority to . . . construe any disputed or doubtful terms of th[e] policy."  The Group Policy further reserves Aetna's "right to adopt reasonable policies, procedures, rules, and interpretations of th[e] policy to promote orderly and efficient administration."  The SPD describes Aetna's authority in a

similarly expansive way, assigning Aetna the "absolute authority and sole discretion" to interpret all terms of the Plan and to resolve ambiguities in the Plan or the SPD.

The relevant documents also provide that a Plan participant who suffers a "total disability" will receive monthly LTD benefits. The amount of such benefits will equal a percentage of the participant's "predisability earnings," up to a monthly maximum of $18,000, "minus all other income benefits" that are "payable for a given month" to the participant or to her spouse, children, or dependents. The Booklet reiterates that "[i]f other income benefits are payable for a given month[,] [t]he monthly benefit payable under th[e] Plan for that month will be the lesser of: the Scheduled Monthly LTD Benefit; and the Maximum Monthly Benefit; minus all other income benefits." It further defines "other income benefits" to encompass "[b]enefits under the Federal Social Security Act."

The SPD consistently states that basic monthly earnings are "the gross monthly pay paid to you by the Company for performing your job in effect immediately before the Disability begins." It clearly provides that "[y]our benefit amount from the LTD Plan is reduced by any payments you are eligible to receive from other sources, such as . . . [b]enefits under the Federal Social Security Act." It further clarifies that the monthly LTD

payments will not be reduced by any cost-of-living increases in other income benefits.

Importantly, as "an example of how the benefit reduction works," the SPD provides a scenario in which Tom, a fictional beneficiary, "has Basic Monthly Earnings of $3,000, bought the 60% level of coverage, . . . becomes eligible for LTD benefits . . . [and] qualifies for a Social Security benefit of $600 per month." The SPD expressly states that, under this example, Tom's monthly LTD benefits would be $1,200: $1,800, which equals 60% of $3,000, minus $600 in Social Security benefits.

The SPD explains that participants can choose between one of two benefit levels: the "base level" of 50% of predisability earnings or the "buy-up" level of 60% of predisability earnings. The employer pays the premiums for 50% of coverage. Participants who choose the buy-up level must pay the premium for the additional 10% of coverage. The SPD explains that the "cost for the additional coverage is deducted from [the participant's] paycheck on an after-tax basis." While the participant is "taxed on both [her own] cost and the Company contributions," the SPD assures that "the LTD Plan benefit will <u>not</u> be subject to income tax." Troiano elected the 60% coverage option.

B.  <u>Troiano's Eligibility for LTD and Social Security Benefits</u>

Troiano became disabled in July 2003 and applied for Plan benefits. From December 2003, when Aetna approved her claim,

until April 2010, when Aetna began offsetting her monthly LTD benefits by her gross Social Security income, Aetna issued to Troiano monthly payments of $3,350, which equals 60% of $5,583.33, Troiano's monthly gross predisability earnings.

In a letter dated June 10, 2009, Aetna informed Troiano that an application for Social Security Disability Insurance ("SSDI") benefits on her behalf was warranted. In fact, Troiano had already applied for SSDI benefits in June 2004. After years of administrative wrangling and litigation in federal district court, an administrative law judge determined in October 2009 that Troiano had been "under a disability," as defined by the Social Security Act, since July 12, 2003. An award letter from the Social Security Administration subsequently confirmed that Troiano had been entitled to baseline monthly payments of $1,783 starting in January 2004 (five calendar months after becoming disabled). It further noted that, in addition to the $1,783, Troiano was entitled to incrementally greater amounts that took into account annual cost-of-living adjustments ("COLAs") for each year she received SSDI payments. By December 2008, the monthly SSDI benefits with COLAs had risen to $2,131, which was $348 more than the $1,783 baseline. The award letter lastly stated that Troiano would receive a lump-sum payment for the amount that had been due to her through January 2010.

In a letter dated April 16, 2010, Aetna informed Troiano that it had learned of her monthly $1,783 SSDI award, as well as the retroactive lump-sum payment. Aetna's letter reminded Troiano that under the provisions of the Plan, her LTD benefits were subject to offset by "other income benefits," that such benefits included "[b]enefits under the Federal Social Security Act," and that Aetna had a right to recover overpayments. After recounting the relevant Plan provisions, the letter announced that Aetna would begin offsetting Troiano's monthly LTD benefits by $1,783, the gross amount of her SSDI benefit. Aetna consistently used this $1,783 amount in all of its calculations regarding the offset. Aetna also demanded, and has since received from Troiano, full reimbursement of $126,526 -- the amount by which it had overpaid Troiano between January 2004 and March 2010.

Fifteen months later, in a letter dated July 29, 2011, Troiano, through her counsel, first requested that Aetna offset her LTD benefits by the net, rather than the gross, amount of her SSDI benefits. As stated in this letter, it is undisputed that Troiano's LTD benefits were tax-free, whereas she was required to pay federal and state income taxes on her SSDI benefits. Following internal communications discussing the "exact verbiage" that Aetna had used in response to such requests before, Aetna denied Troiano's request in a short letter to her counsel dated November 28, 2011: "It is industry standard to offset the . . . gross amount

and not the net amount.  To adjust the SSDI offset, according to net amount, would involve taxes and we do not get involved in taxation."

After another six months, Troiano's counsel followed up with a second letter.  Styled as an "appeal" of Aetna's decision to apply a gross offset and dated May 25, 2012, this letter articulated Troiano's argument for why a net offset was proper.[1] Troiano also requested in the letter that Aetna turn over numerous documents that she claimed were relevant to Aetna's decision to apply a gross offset.  She asserted that Aetna was obligated to comply with her request under ERISA and applicable Department of Labor regulations.  Although internal emails reveal that Aetna's in-house legal team discussed this May 2012 letter, Aetna never responded to Troiano's second request.

Aetna continues to offset Troiano's monthly LTD benefits by the gross amount of her $1,783 baseline monthly SSDI income, as it has always done.

II.

On November 13, 2014, Troiano filed suit against Aetna and GDC in the U.S. District Court for the District of Rhode Island.  She alleged that Aetna had breached its fiduciary duty

---

[1]    The letter also urged Aetna to reduce the offset amount by Troiano's monthly Medicare premiums and to reimburse her for various fees that she had incurred during the SSDI application process.  These issues are not on appeal.

and sought a declaration "that her past and future LTD benefits should be offset against the SSDI benefits she was awarded _minus_ any income taxes she was assessed on such benefits." (We do not recount the procedural history surrounding Troiano's amended complaint, which is no longer relevant.)

Defendants GDC and Aetna moved for summary judgment in March 2015. On May 8, 2015, the district court held a hearing on Troiano's motion for an order compelling production of privileged documents and for discovery under Federal Rule of Civil Procedure 56(d). The district court denied the motion from the bench. Throughout the hearing, the court reminded Troiano that "discovery [wa]s the exception" in ERISA cases and thus that Troiano faced a heavy burden of "narrowing [the discovery request] and tailoring it to those bits of information that [she] need[ed] in order to respond" to the defendants' summary judgment motion. The district court ultimately ruled that Troiano had failed to meet this burden by seeking "a full panoply of discovery" with an impermissible "scattershot[,] I want everything" approach. The court would not allow Troiano's "fishing expedition, to uncover something that w[ould] create an ambiguity" in the Plan language.

At the end of the hearing, the court also denied Troiano's request for "conflict discovery" under Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008). The court found that

Troiano's case was not a "denial of benefits," as explained below, and that Glenn was therefore inapposite.

Troiano then filed both a response to the defendants' earlier motion for summary judgment and a cross-motion for summary judgment. The district court resolved the cross-motions in the defendants' favor. As a threshold matter, in both the hearing and the summary judgment opinion, the district court rejected Troiano's argument that Aetna's offset of her LTD benefits by the gross amount of her SSDI benefits was a denial or reduction of benefits. It noted first that "this case [wa]s not about the denial of LTD benefits under 29 U.S.C. § 1132(a)(1)(B)" because it was "undisputed that Aetna approved Troiano's disability claim and that it paid her more than $248,251 in unreduced, non-taxed LTD benefits over a six-year period." Troiano v. Aetna Life Ins. Co., No. 14-496-ML, 2015 WL 5775160, at *7 (D.R.I. Sept. 30, 2015).

The district court likewise ruled that the offset was not a reduction of benefits because Troiano continued to benefit from "regular COLA increases which, under the terms of the Plan, do not contribute to a further reduction of her LTD benefits." Id. at *8. Further, the court reasoned that the extent of Troiano's income tax exposure was beyond Aetna's control: "[W]hether and to what extent [Troiano's] SSDI benefits are taxable is really controlled by her own life's activities: whether she's married, whether she has children, whether she adopts children,

whether she has a home.  [I]t's all going to be determined by factors that are not within the control of Aetna."  Transcript of Motion Hearing at 36, <u>Troiano</u>, No. 14-496-ML, ECF No. 30 (D.R.I. 2015).

First, it observed that the language of the Plan -- which interpretation of the Plan's offset provision -- namely, whether that provision should be read as providing for a gross or net offset.  In approaching this task, the court rejected Troiano's argument that de novo review should apply.  The court instead held that Aetna's interpretation was reasonable and thus entitled to deference because the Plan's "plain language" vested Aetna with "broad discretionary powers and authority to interpret the provisions of the Plan."  <u>Troiano</u>, 2015 WL 5775160, at *7.

First, it observed that the language of the Plan -- which stated that "LTD benefits were subject to an offset against any SSDI benefits that were 'payable to her for a given month,' or which she was 'eligible to receive'" -- made no guarantees that Troiano would receive a tax-free monthly benefit equal to 60% of her gross monthly predisability earnings.  <u>Id.</u> at *8.  The court also noted that the SPD's example decreased the fictional beneficiary's LTD benefits by $600 in SSDI benefits per month, but that "[n]othing in the example indicates that this is the amount the beneficiary actually receives, nor does the example indicate

that the offset includes a calculation of any income tax liability the recipient may incur." Id. Finally, the court credited Aetna's argument that "including a calculation of each Plan participant's varying . . . income tax liability would be unreasonably burdensome and preclude the orderly and effective administration of the Plan." Id. All of these considerations counseled in favor of Aetna's Plan interpretation.

Troiano now appeals, challenging both the affirmance of Aetna's Plan interpretation and the denial of discovery under Glenn and Rule 56(d).

III.

A.  Interpretation of Plan's Offset Provision

We review de novo a district court's resolution of cross-motions for summary judgment. Rideout v. Gardner, 838 F.3d 65, 71 (1st Cir. 2016). "We may affirm the district court's decision on any grounds supported by the record." Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (quoting Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 62 (1st Cir. 2004)).

The parties' first point of disagreement is the appropriate standard of review that the district court should have applied in resolving their conflicting interpretations of the Plan language. Troiano maintains that her lawsuit is an appeal of a benefits denial or reduction under 29 U.S.C. § 1132(a)(1)(B), and that de novo review should apply. See Firestone Tire & Rubber Co.

v. Bruch, 489 U.S. 101, 115 (1989). Although she acknowledges that a plan that expressly gives the plan administrator discretionary authority to construe the plan's terms enjoys deference even under Firestone, see id., she argues that Aetna forfeited the deference that it would ordinarily enjoy because it violated ERISA regulations when it neglected to reply to her May 25, 2012 "appeal" letter. See Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 230, 240 (1st Cir. 2006). Aetna responds by reiterating why Troiano's suit concerns neither a denial nor a reduction in benefits and thus lies altogether outside of the § 1132(a)(1)(B) framework. In Aetna's view, the language of the Plan, which grants Aetna "discretionary authority to[] . . . construe any disputed or doubtful terms of th[e] policy," should control.

We need not resolve this issue because, even making four key assumptions in Troiano's favor and applying de novo review, she still loses. We assume for purposes of adjudicating this suit that (1) Troiano's suit is indeed a challenge to a benefit denial or reduction under § 1132(a)(1)(B); (2) Aetna committed ERISA violations and thus forfeited the deferential standard of review it would otherwise have received; (3) Aetna's assumed procedural violations prejudiced Troiano; and (4) Troiano filed a timely appeal within the Plan's 180-day deadline and thus did not forfeit judicial review. See Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 425–26 (1st Cir. 2016)

- 13 -

(requiring showing of prejudice); Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (requiring compliance with an ERISA plan's internal appeal procedures). Aetna's interpretation of the Plan language withstands de novo scrutiny.

The Plan language makes clear that Troiano's reading is unreasonable. The Plan repeatedly states that LTD benefits will be offset by other income benefits that are "payable" to the beneficiary or her dependents: "If other income benefits are payable for a given month: The monthly benefit payable under this Plan for that month will be the lesser of: the Scheduled Monthly LTD Benefit[] and the Maximum Monthly Benefit; minus all other income benefits, but not less than the Minimum Monthly Benefit." It then defines "[o]ther income benefits" to "include those, due to your disability or retirement, which are payable to: you; your spouse; your children; your dependents." The SPD, meanwhile, notes that a beneficiary's LTD benefits will be reduced by other payments that she is "eligible to receive" from other income sources.

Both the "payable" and the "eligible to receive" language illustrate that the amount that Aetna may permissibly offset is the full SSDI amount that is payable to Troiano or, put another way, that Troiano was eligible to receive from the Social Security Administration. Troiano was eligible for monthly payments of $1,783, notwithstanding the amount of taxes -- if any -- that she could have to pay on that sum. Accordingly, the plain

language of the Plan -- which allows for offsets by other income that is _payable_ to the beneficiary -- supports Aetna's decision to offset Troiano's LTD benefits by the full amount of SSDI benefits for which she is eligible, rather than by the amount left over after she has paid whatever income tax she owes to federal and state governments.[2]

The law is not in Troiano's favor. The Eighth Circuit has reached precisely the same conclusion as ours after examining similar ERISA plan language. See _Parke_ v. _First Reliance Standard Life Ins. Co._, 368 F.3d 999, 1005 (8th Cir. 2004) (where an LTD plan allowed the administrator to offset monthly LTD payments by SSDI benefits that the beneficiary "[wa]s eligible to receive because of his/her Total Disability," the administrator could offset its LTD payments by the gross SSDI amount because the beneficiary was "eligible to receive the full [pre-tax amount] each month" (emphasis added)).

The context in which the relevant provisions appear further confirms that the Plan allows for a gross offset. In the

---

[2] At oral argument, each party pointed out language that would have to have been included in the Plan or SPD for the opposing party's interpretation to be reasonable. Troiano argued that it would have been simple for Aetna to add one line in the Plan clarifying that LTD benefits would be offset by the gross amount of a beneficiary's SSDI benefits, and yet Aetna did not do so. Aetna countered that Troiano's reading of the Plan would require extensive language about the method by which it would calculate and audit each individual beneficiary's tax liabilities and about the documentation that each beneficiary must submit to Aetna.

- 15 -

same section that defines "other income benefits" to include Social Security benefits, the Plan expressly limits the amount by which Aetna may offset LTD benefits by other types of income benefits. For instance, only "50% of any award provided under The Jones Act or The Maritime Doctrine of Maintenance, Wages and Cure" can count toward the offset of LTD benefits. Similarly, "retirement benefits for which [one is] or may become eligible under a group pension plan" qualify as offset-eligible income "only to the extent that such benefits were paid for by an employer." The specificity with which the Jones Act and pension-plan benefits were defined demonstrates that the Plan was written with express limits on Aetna's ability to offset, where such limits were actually contemplated. Cognizant of the Plan's selective use of explicit limiting language in defining "other income benefits," we decline to read an implicit net-offset limitation into the Plan where nothing indicates that the Plan includes one.

The accessible example provided in the SPD is also contrary to Troiano's net-offset reading. In that example, Tom, a fictional beneficiary, had predisability earnings of $3,000 per month, signed up for the 60% level of coverage, became eligible for LTD benefits, and also "qualifie[d] for a Social Security benefit of $600 per month." Tom's monthly LTD benefit would be $1,200 per the following calculation provided in the SPD:

```
$1,800 Tom's unreduced LTD benefit (60% of $3,000)
- $600 Social Security benefit
_____
$1,200 Tom's monthly LTD benefit
```

This example does not mention taxes in any way. Rather, it states that Tom qualified for monthly SSDI benefits of $600 -- just as Troiano qualified for monthly SSDI benefits of $1,783 -- and deducts that full amount from his monthly LTD benefits. In addition to the Plan language, this example put Troiano on notice that her LTD benefits would be offset by any SSDI-benefit amount for which she was eligible, without any exploration into her tax liability, if any, on that sum.

The administrative consequences that would flow from Troiano's contrary interpretation only confirm our reading in favor of a gross offset. Troiano's interpretation -- that Aetna must offset by the net amount of her SSDI benefits -- would require Aetna to take in a staggering amount of personal tax information from Troiano and others similarly situated. It would require Aetna to audit that tax information in order to ensure the accuracy of the tax calculations provided by each beneficiary -- not to mention the fact that the tax obligations of individual beneficiaries may change on a yearly basis, thereby requiring Aetna to account for and audit tax documents year after year, for beneficiary after beneficiary, on an individual basis. Such a system would result in a tremendous increase in Aetna's administrative burden and,

perhaps, affect its actuarial accounting.[3]  We find it implausible that a plan would envision such a complex scheme without a single reference to its implementation.  Plan administrators could choose to pass on the added cost of doing business to beneficiaries in the form of higher premiums and lower benefits, ultimately hurting beneficiaries.    The  cascading  adverse  effects  of  Troiano's implausible  interpretation  reinforce  the  sensible  industry standard among ERISA plan administrators to "not get involved in taxation."

Troiano argues that the SPD's assurance that her "LTD Plan benefit [would] not be subject to income tax" supports her contention that any SSDI benefits she receives should be offset on a net, rather than gross, basis.  Otherwise, she contends, the Plan would violate its own guarantee that her "Scheduled Monthly LTD  Benefit"  would  be  "60%  of  [her]  monthly  predisability earnings."

But  the  language  of  the  SPD  states  that  Troiano's "benefit amount from the LTD plan" -- undisputedly, a tax-free benefit -- will be "reduced by any payments [a participant is] eligible to receive from other sources," such as SSDI.  Nowhere does the SPD state that "other income benefits" themselves will

---

[3]    Indeed, at oral argument, Troiano could identify no analogous circumstance  under  which  an  ERISA  plan  administrator  was responsible  for  calculating  the  tax  liability  of  every  plan participant.

not be subject to tax.  If anything, the SPD suggests the opposite by virtue of its reference to offsetting "payments."

Nor does the Plan by its terms suggest otherwise.  The Plan explicitly states -- in accord with the SPD -- that "[a]ny benefit actually payable may be reduced by 'other income benefits.'"  The Plan does not state that these other income benefits will not be subject to tax or that, after the offset by other income benefits, the benefit actually payable will also necessarily equal 60% of the participant's gross monthly predisability earnings.  And, for the reasons just given, we do not believe it would be accurate to read the Plan impliedly to have said otherwise.

Finally, Troiano invokes the contra proferentem canon, but that canon does not salvage her losing claim.  Contra proferentem counsels "that the policy terms must be strictly construed against the insurer and in favor of the insured . . . when courts undertake de novo review of plan interpretations." Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 93 (1st Cir. 2008). But the canon applies only where the Plan language is ambiguous. See, e.g., Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002).  In this context, where the Plan language unambiguously supports Aetna's interpretation, the canon has no application.

The Plan's plain language, the textual context in which that language appears, the sample SSDI offset provided in the SPD,

- 19 -

and the administrative consequences of a net-offset system lead us to conclude that the Plan permits Aetna to offset LTD benefits by the gross amount of SSDI benefits. We reach this outcome even applying de novo review. Simply put, no provision in the Plan or SPD guaranteed Troiano 60% of her predisability earnings after taking into account all relevant offsets and corresponding tax liabilities.

B.  Denial of Discovery

Troiano also appeals the district court's denial of discovery. She contends that under either Federal Rule of Civil Procedure 56(d) or a theory of Aetna's structural conflict of interest, she should have been granted discovery. She is mistaken.

First, and assuming again in Troiano's favor that her suit properly falls within the benefits-denial framework, Troiano did not meet her threshold burden of showing that Aetna's purported conflict influenced its decision to deny her a benefit. While this circuit has recognized that "courts should take cognizance of structural conflicts in ERISA cases . . . whenever a plan administrator, whether an employer or an insurer, is in the position of both adjudicating claims and paying awarded benefits," Denmark v. Liberty Life Assur. Co. of Bos., 566 F.3d 1, 7 (1st Cir. 2009), we have also emphasized that the same burden-of-proof rules that apply to "any other aspect of an ERISA claim for improper denial of benefits" likewise apply to the conflict-

discovery issue, Cusson v. Liberty Life Assur. Co. of Bos., 592 F.3d 215, 225 (1st Cir. 2010), abrogated on other grounds by Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan, 136 S. Ct. 651 (2016). The beneficiary thus bears the burden of showing that the conflict influenced the Plan administrator's decision in some way. Troiano has offered nothing to show that Aetna's structural conflict influenced its gross-offset decision.

Second, the district court did not abuse its "broad measure of discretion" in denying Rule 56(d) discovery. Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989) (quoting In re Recticel Foam Corp., 859 F.2d 1000, 1006 (1st Cir. 1988)). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion]," Rule 56(d) empowers the district court to "allow time to obtain affidavits or declarations or to take discovery," among other options. Fed. R. Civ. P. 56(d) (emphasis added). But "Rule 56(d) relief is not to be granted as a matter of course. . . . [T]he district court is entitled to refuse a Rule 56(d) motion if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplemental discovery." Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014). Especially in the ERISA context, where "cases are generally decided on the administrative record without discovery," Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d

- 21 -

693, 698 (1st Cir. 2007), the party seeking discovery must provide "some very good reason . . . to overcome the strong presumption" against discovery, Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003)).

The district court did not abuse its discretion or cause Troiano to suffer "manifest injustice" when it concluded that she had not satisfied this heavy burden. Mack, 871 F.2d at 186. At the May 2015 motions hearing, the court noted that Troiano had impermissibly asked for "a full panoply of discovery," taken a "scattershot[,] I want everything" approach, and sought to uncover material that might "create an ambiguity" in the Plan language through a "fishing expedition." Given that the case was a matter of interpreting Plan language, the court supportably ruled that it could "simply decide this case based on the facts as asserted by the Plaintiff and the plan documentation as provided in the administrative record." We have no occasion to disturb this decision.

IV.

Because there is no ambiguity in the language of the Plan and no error in the district court's decision to deny discovery, we conclude that Troiano received all that she bargained for through her monthly LTD benefits that are offset by the gross amount of her monthly SSDI benefits. We affirm.